[S. F. No. 2480. In Bank.—February 18, 1904.]

D. H. FOLEY, Respondent, v. HENRY S. MARTIN et al., Appellants.

SHERIFF—ABUSE OF AUTHORITY IN SERVICE OF PROCESS—BREAKING INTO DWELLING-HOUSE—RECOVERY OF DAMAGES.—A sheriff, or his deputy, has no authority in the service of civil process to break into a dwelling-house, and damages may be recovered for the trespass thus committed by reason of such abuse of authority, in serving process upon the owner of such dwelling.

ID.—EXEMPLARY DAMAGES—ACTUAL DAMAGES—SEGREGATION IN FINDINGS.—Where the complaint states facts justifying the recovery of exemplary damages, the court in its findings need not segregate the amount of actual damages from the amount of exemplary damages, unless requested so to do.

ID.—TORT OF DEPUTIES—EXTENT OF LIABILITY OF SHERIFF.—The sheriff is only liable for compensatory damages for the tort of his deputies in serving the process in an unlawful manner, by breaking into a dwelling-house, and not for exemplary or punitive damages therefor, unless the malicious or oppressive acts of the deputies were authorized or ratified by the sheriff.

ID.—PRINCIPAL AND AGENT—MALICE OF AGENT—LIABILITY OF INNOCENT PRINCIPAL.—The law of principal and agent is applicable to the relation between a sheriff and his deputy; and where an innocent master incurs no penalty for the malice of his servant, an innocent sheriff should not be punished with vindictive damages for the malice of his deputy.

ID.—RATIFICATION OF MISCONDUCT OF AGENT.—The retention or promotion of an offending agent after knowledge of his misconduct is evidence of ratification, which may be very conclusive or very slight, according to circumstances. If the facts are promptly called to the attention of the principal, and if, with the means of verifying the truth of the charge, he neglects to make due inquiry, and afterwards retains the guilty agent in his employment, or promotes him to a better position, he makes himself *particeps criminis,* and lays the foundation of an action against himself for punitive damages.

ID.—TORTS OF DEPUTIES NOT RATIFIED BY SHERIFF.—Where it appears that the sheriff had no notice of any oppressive action of his deputies in the service of summons, other than the fact of the service of summons, and was furnished with no proofs, and had no means of informing himself, except by inquiry from his deputies, and learned from them that they had done nothing except what they were specifically directed to do by order of the justice's court, which, though it was invalid, they had complied with in good faith and without any wanton or unnecessary violence, the sheriff ought not to be held, under these circumstances, to have ratified their unlawful acts by mere failure to discharge them in advance of the investigation of their conduct, in the mode invited by the plaintiff.

ID.—RULE AS TO VINDICTIVE DAMAGES AGAINST PRINCIPAL—INFORMATION OF FACTS BEFORE SUIT.—It is a safe and just rule that if a plaintiff in such a case as this desires to charge a principal with vindictive damages on the ground of ratification, he should make his cause of action complete before commencing the action, by informing the principal of the facts and giving him an opportunity of redressing the wrong before being forced to defend it.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Edgar D. Peixotto, for Appellants.

The sheriff, after gaining a peaceable entrance, may break open inner doors, etc. (*Semâyne's Case*, 1 Smith's Leading Cases, 8th ed., p. 238, notes, pp. 243-249; Crocker on Sheriffs, sec. 313; 2 Freeman on Executions, 2d ed., sec. 256; *Keith v. Johnson*, 1 Dana, 604.[1]) This is not a case for exemplary damages against the sheriff for the action of his deputies. (*Warner v. Southern Pacific Co.*, 113 Cal. 105-111;[2] *Trabing v. California etc. Co.*, 121 Cal. 137, 143; *Nixon v. Rauer*, (Cal.) 66 Pac. 221; *Railroad Co. v. Prentice*, 147 U. S. 107.)

Mastick, Van Fleet & Mastick, and Edward F. Treadwell, for Respondent.

The breaking into the dwelling-house by a sheriff or his deputy in order to serve civil process was an unauthorized abuse of the process. (*Semayne's Case*, 1 Smith's Leading Cases, 9th ed., p. 228; Crocker on Sheriffs, secs. 313, 317, 350, and cases cited; 2 Freeman on Executions, 2d ed., sec. 256.) The sheriff is liable for the trespass of his deputies. (*Hirsch v. Rand*, 39 Cal. 315, 318; *Van Pelt v. Littler*, 14 Cal. 199; *Campbell v. Phelps*, 17 Mass. 244; *Hazard v. Israel*, 1 Binn. 240, 245;[3] *Johnson v. Edson*, 2 Aiken, 299.) Retaining the deputies in his employment after notice of their tortious acts was a ratification thereof, which makes the sheriff liable for exemplary damages. (*Bass v. Chicago etc. Ry. Co.*, 42 Wis. 654, 667;[4] *Goddard v. Grand T. Ry. Co.*, 57 Me. 202, 227; *Craker v. Chicago etc. Ry. Co.*, 36 Wis. 657, 676;[5] *Avakian v. Noble*, 121 Cal. 216; 12 Am. & Eng. Ency. of Law, 2d ed., p. 37, note 7; *Perkins v. Missouri etc. Ry. Co.*, 55 Mo. 201, 214.)

BEATTY, C. J.—A rehearing of this case was ordered after affirmance of the judgment and order appealed from, based upon the following opinion rendered in Department:—

"Action to recover damages for a trespass committed by the sheriff by reason of the abuse of his authority in serving process upon the plaintiff. The action was tried by the court

---

[1] 25 Am. Dec. 167, and note.

[2] 54 Am. St. Rep. 327.

[3] 2 Am. Dec. 438.

[4] 24 Am. Rep. 437.

[5] 17 Am. Rep. 504.

without a jury. Judgment was rendered in favor of the plaintiff for the sum of five hundred dollars, from which and from an order denying a new trial the defendants have appealed.

"In an action against the plaintiff pending in the justice's court for San Francisco the summons was delivered to the defendant Martin, who was the sheriff of the city and county, for service upon the plaintiff. The deputy to whom he gave the papers for service, accompanied by another deputy, went to the residence of the plaintiff, and not being able to obtain entrance at the front door, went to the rear of the house and up a staircase to a porch on the second story of the building. Upon reaching this porch, and finding the door leading from it into the house locked or bolted, one of the deputies opened a door leading into a closet which had been built upon the porch, and in which there was a window six feet above the floor, with a swinging sash about fourteen by sixteen inches in size opening into a pantry, within the house. One of the deputies, with the aid of the other, and by means of a step-ladder, climbed through this window into the pantry, and from that went into the kitchen and unlocked the outer door opening upon the porch, and the two then went through the house in search of the plaintiff. The plaintiff was at that time, and had been for several months, an invalid, confined to his bed by reason of paralysis of his right side, and susceptible to great suffering in case of any unusual excitement. Before making this attempt to enter the house the deputies had been informed that he was sick, but stated that if they were not let into the house they would break in. When they came to the room in which the plaintiff lay, they found it locked, and tried to force an entrance by means of a chisel placed in the jamb of the door. Failing to open the door by this means, one of them kicked against the door several times, and then the two, pressing against it and pushing with their shoulders, forced it open, and in doing so broke the lock and knob of the door, and also broke the woodwork of the door into several pieces. One of them gave the papers to the defendant as he lay in bed. The court found upon the evidence that the sheriff unlawfully entered the house of the plaintiff, and in so doing was guilty of gross and willful oppression and

of willful abuse of his authority as an officer in the service of
the process against the plaintiff.

"The proposition is elementary that a sheriff has no author-
ity to break into a dwelling-house for the service of process
in a civil action. (*Semayne's Case,* 5 Coke, 91; 1 Smith's
Leading Cases, \*p. 183; Crocker on Sheriffs, secs. 313-317,
350; *Snydacker* v. *Brosse,* 51 Ill. 357;[1] *State* v. *Beckner,* 132
Ind. 371;[2] *Curtis* v. *Hubbard,* 1 Hill, 336, affirmed 4 Hill
437.[3]) Mr. Crocker says in reference to the service of sum-
mons (sec. 350) : 'In making the service the officer has no
more power than any individual. He may enter the defend-
ant's house in the day or night-time to make the service peace-
ably, if he can, but he has no right to enter forcibly, or against
the owner's wishes.' In Freeman on Executions (sec. 256) the
author says: 'It is not necessary in order to entitle the de-
fendant to protect his dwelling from intrusion that the door
be either shut or locked, if he being present shows a desire to
exclude the officer by closing the door against him.' The evi-
dence before the court fully shows that the officer violated
these rules and sustains the above finding of the court. Entry
through the window was itself a breaking into the house.
'The outer door was shut. That was itself a prohibition.'
(*Curtis* v. *Hubbard,* 1 Hill, 336; 4 Hill, 437.[3])

"The act of the deputy was the act of the sheriff. The
deputy is not the agent or servant of the sheriff, but is his
representative, and the sheriff is liable for his acts the same
as if they had been done by himself. 'The act constituting
the cause of action is that of the defendant, and, though done
through a deputy, is considered in law as done directly and
personally by him.' (*Hirsch* v. *Rand,* 39 Cal. 315.)

"The plaintiff was not limited in his recovery to a judg-
ment for merely the actual damage done to his property. The
finding of the court that the sheriff was guilty of gross and
willful oppression in committing the trespass is fully sus-
tained by the evidence, and in such a case the court is author-
ized to give exemplary damages. (Civ. Code, sec. 3294.) The
facts justifying exemplary damages are set forth in the com-
plaint, and the allegations were sustained by the evidence.

[1] 99 Am. Dec. 551.          [3] 40 Am. Dec. 292.

[2] 32 Am. St. Rep. 257.

There was also evidence of substantial actual damage to property—the broken door and the broken lock and knob were exhibited at the trial—from which the court was authorized to find that the plaintiff was entitled to more than nominal damages. Under the evidence in the case it cannot be said that the amount awarded is excessive. Neither was it necessary for the court any more than it would have been for a jury, if the case had been tried before a jury, to segregate in its findings the amount of actual damage from the amount given as exemplary damages, unless requested so to do.

"The demurrer to the complaint was properly overruled. The complaint distinctly set forth the amount claimed for actual damages and the amount claimed as exemplary damages. The only claim for actual damages was that caused to the property of the plaintiff.

"The judgment and order are affirmed."

This opinion was and is entirely satisfactory to the court, except as to one proposition, and as qualified herein, and with that exception, is readopted.

The damages recovered by respondent were in a large part punitive, or vindictive,—such damages, that is to say, as are recoverable only under section 3294 of the Civil Code for fraud, oppression, or malice accompanying a tort, and one of the questions presented by the case was whether a sheriff is liable in punitive damages for the oppressive acts of his deputy in attempting service of process in an unlawful manner. It was held by the Department that he was liable for the act of his deputy to the same extent as if he had performed the act in person. This conclusion was directly opposed to the decision in *Nixon* v. *Rauer*, (Cal.) 66 Pac. 221, in which the same rule was held to apply in favor of an officer when sued for the tort of his deputy that has become the settled law of this state in actions against a principal or master for the tort of his agent or servant. That rule is, that nothing beyond compensatory damages can be recovered, unless the malice or oppression characterizing the injury has been authorized or ratified by the defendant. (See *Nixon* v. *Rauer*, (Cal.) 66 Pac. 221, and cases therein cited.) We are aware that the reason that case does not appear in our reports is, that there was no argument against the proposition decided, and this because the

controversy had been settled by the parties prior to our decision. We do not therefore cite the case as authority, but merely refer to it for the purpose of indicating the principal reason for ordering this rehearing.

It is contended by counsel for respondent that the rule as to the liability of an officer for the malicious acts of his deputy is different from the rule measuring the liability of master or principal, but we cannot discover in any of the cases cited in support of this contention that any such distinction is made or that any reason is suggested for making it. It is true that in one case (*Hazard* v. *Israel*, 1 Binn. 240[1]) it was expressly held that, irrespective of authorization or ratification, a sheriff is liable in punitive damages for the oppressive misconduct of his deputy in serving civil process. Several other cases are cited which are perhaps indirectly to the same effect, but they are all, so far as we can discover, decided upon a ground which equally embraces an action against master or principal, and it is certain that none of them suggests a distinction, or any reason for a distinction, which would call for the application of one rule in one case and a different rule in the other case. In fact, there are many more cases in which the strict rule has been applied in actions against principals than in actions against sheriffs. (For a reference to these cases see *Goddard* v. *Grand Trunk Ry. Co.*, 57 Me. 225, and the note to 2 Redfield on Railways, therein cited.) In short, it seems that the strict rule, where it obtained, was applied indiscriminately against all principals, whether private or official, and it would seem to follow that where the more liberal rule obtains it should be applied with equal impartiality. If an innocent master incurs no penalty for the malice of his servant, upon the same principle an innocent officer should not be punished for the malice of his deputy. It is enough that he, the same as any other principal in like case, should be held to make full compensation for the injury actually sustained by the plaintiff.

There is nothing inconsistent with this view in the case cited in the Department opinion. (*Hirsch* v. *Rand*, 39 Cal. 315.) All that was there decided was a point of practice, which required no consideration of the rule of damages. The court merely held that in an action for false imprisonment

---

[1] 2 Am. Dec. 438.

caused by the act of a deputy marshal the facts could be proved under a general allegation that it was caused by the defendant, without alleging specially the official character of the defendant, and the fact that the arrest and imprisonment were caused by his deputy. The principle of the decision was the familiar one, *Qui facit per alium, facit per se,* which applies to all persons, private as well as official, who act through the agency of others. We conclude that the case of *Nixon* v. *Rauer,* although not argued by respondent, and for that reason not reported, was correctly decided.

This appeal is not, however, disposed of by holding that a sheriff is exempt from the penalty of vindictive damages where he has not authorized or ratified the oppressive misconduct of his deputy, for here the court has found that the defendant Martin did ratify the acts of his deputies; and the question remains whether this finding is sustained by the evidence.

The defendant testified that he had no personal knowledge whatever of the transaction upon which the suit is founded until served with summons, and there was no evidence to the contrary. But he did not, when sued, discharge his deputies, and they were still serving when the action was tried. There is no doubt that the retention or promotion of an offending agent after knowledge of his misconduct is evidence of ratification, which may be very conclusive or very slight and insufficient, according to circumstances. If the facts are promptly called to the attention of the principal, and if, with the means of verifying the truth of the charge, he neglects to make due inquiry, and afterwards retains the guilty agent in his employment, or promotes him to a better position, he makes himself *particeps criminis,* and lays the foundation of an action against himself for punitive damages. But we have been referred to no case which holds him to that measure of liability when his first and only notice of his agent's misconduct was the service of summons in the action.

If such had been the decision in *Bass* v. *Chicago etc. Ry. Co.,* 42 Wis. 654,[1] that case would have stood alone upon the proposition, so far as we have discovered. But even in that case the decision was not rested upon the ground that the

[1] 24 Am. Rep. 437.

defendant had notice by the commencement of the action. The case was one of very gross outrage by a brakeman upon an inoffensive passenger. The conductor of the train was im-. mediately informed of the circumstances by the plaintiff and by other passengers, and complaint was promptly made to the company, whose attorney, as intimated by the court, instead of trying to ascertain the truth of the transaction limited his efforts to screening the guilty conductor and brakeman. It was after all this that the action was commenced, and the fact that the guilty agents were retained in their employment after suit was merely mentioned as one circumstance along with others tending to prove ratification, the court holding expressly that notice to the conductor in charge of the train was notice to the corporation of the misconduct of the brakeman.

The present case is very different. The sheriff here had no notice except by the service of summons. He was furnished with no proofs, and had no means of informing himself, except by inquiry of his deputies; and what he learned from them was, that they had done nothing except what they had been specifically directed to do by an order of the justice's court,—an invalid order, it is true, but still a direction upon which they seem to have acted in good faith, and without any wanton or unnecessary violence. Under these circumstances, we think that the mere failure of the sheriff to at once discharge his deputies in advance of an investigation of their conduct, in the mode invited by the plaintiff, ought not to be held a ratification of their unauthorized acts. We think, indeed, that it is a safe and just rule to lay down, that if a plaintiff in such a case as this desires to charge a principal with vindictive damages upon the ground of ratification, he should make his cause of action complete before commencing it, by informing the principal of the facts and giving him an opportunity of redressing the wrong before being forced to defend it. Such was the course pursued in *Avakian* v. *Noble,* 121 Cal. 216.

The judgment and order appealed from are reversed.

Van Dyke, J., Angellotti, J., McFarland, J., and Lorigan, J., concurred.

Rehearing denied.